SLIP OPINION

Cite as 2014 Ark. App. 523

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-14-174

| | |
|---|---|
| BRANDY JUNG | **Opinion Delivered** October 1, 2014 |
| APPELLANT | |
| | APPEAL FROM THE CARROLL |
| V. | COUNTY CIRCUIT COURT, |
| | EASTERN DISTRICT |
| | [NO. JV-12-33] |
| ARKANSAS DEPARTMENT OF | |
| HUMAN SERVICES and N.E., MINOR | HONORABLE GERALD K. CROW, |
| CHILD | JUDGE |
| APPELLEES | |
| | AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Brandy Jung appeals from a Carroll County Circuit Court order terminating her parental rights to her child, N.E.[1] She challenges the court's finding that termination was in the best interest of the child as well as its finding that there were statutory grounds present on which to base a termination. Because these findings were supported by clear and convincing evidence, we affirm.

### I. *Standard of Review*

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Jones-Lee v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 160, 316

---

[1] The court also terminated the parental rights of the father, Rodney Evans. He appealed the termination order and the two appeals were consolidated. *See* CV-14-200. He subsequently moved to dismiss his appeal, and his motion was granted on July 10, 2014. As a result, he is no longer a party to this appeal.

SLIP OPINION

S.W.3d 261. However, courts are not to enforce parental rights to the detriment or destruction of the health and well-being of a child. *Id.* An order terminating parental rights must be based on the court's finding by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Supp. 2013). Additionally, the trial court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013). We review termination-of-parental-rights cases de novo, but we do not reverse unless the circuit court's clear-and-convincing evidence findings are clearly erroneous. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261

## II. *Procedural History*

A de novo review of the record reveals that N.E. was born in January 2012. Four months later, in May 2012, he was taken into the custody of the Arkansas Department of Human Services (DHS). The police notified DHS that Jung had been arrested for commercial burglary, theft of property, and second-degree child endangerment after she was found at an abandoned hotel where alleged copper theft was occurring. The police needed DHS intervention because N.E. was in Jung's care at the time of her arrest. Evans, the father, was also present; however, there was an active order of protection against him related to a domestic-violence incident involving Jung. When the caseworker took N.E. into custody,

the child's clothing was dirty and the diaper bag reeked of cigarette smoke and contained no formula.

After the child was taken into custody, DHS discovered other factors that placed the child's health and safety at risk. First, it was determined that, although N.E. was receiving WIC assistance, Jung had not been picking up the vouchers. Second, it was discovered that the child had attended only one well-baby check up at two weeks of age and had not received any of her shots. Finally, DHS ascertained that an investigation had previously been opened in March 2012 with regard to Jung's smoking in the car with N.E. and using methamphetamines while caring for the child. DHS had been unable to complete the investigation because the family could not be located.

Based on these facts, DHS filed a petition for emergency custody, which was granted by the court. In June 2012, the court adjudicated dependency-neglect, set the goal of reunification, ordered reunification services, and ordered that Jung comply with the court's directives. Specifically, Jung was ordered to (1) obtain and complete a drug and alcohol assessment and comply with all recommendations resulting therefrom; (2) refrain from the use and/or possession of any and all illegal substances and/or drug paraphernalia; (3) maintain safe, stable and appropriate housing; and (4) maintain stable employment.

Subsequently, the court held review hearings to monitor the case. The court's orders from these hearings reflect that Jung was not compliant with the court's orders pertaining to maintaining stable housing and employment and that Jung had failed drug screens. By the time the case reached a permanency-planning hearing in March 2013, Jung had not remained

SLIP OPINION

drug-free as evidenced by positive drug screening, had not maintained stable housing or employment, had not paid child support, and had criminal charges pending.

On May 31, 2013, DHS filed a petition to terminate parental rights. The petition alleged that terminating Jung's parental rights was in the child's best interest and that four statutory grounds for termination existed under Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(*a*), (ii)(*a*), (vii)(*a*) & (ix)(*a*)(*3*)(*A*)−(*B*)(*i*) (Supp. 2013). After a hearing on the merits, the trial court entered an order terminating Jung's parental rights. In doing so, it found that termination was in the best interest of the child and that DHS had proved all four statutory grounds.

III. *Points on Appeal*

Jung initially challenges the trial court's finding that termination was in the child's best interest. She concedes that N.E. is adoptable, but contends there was insufficient evidence of potential harm in returning the child to her. In support of her argument, she notes that she never abused N.E. and there was no evidence that she posed a threat of harm to the child, either physically or emotionally. She further stresses the evidence of the services she completed prior to the termination hearing. While she admits that she tested positive for drugs in the beginning of the case, she contends she had been testing clean and had successfully completed rehabilitation by the end of the case. She states that the trial court and the caseworker erroneously relied on conjecture and innuendo to find that she had provided adulterated samples for her drug screens and that no evidence of such adulteration existed.

In considering the potential harm caused by returning the child to a parent, the court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Welch v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 798, 378 S.W.3d 290. Potential harm must be viewed in a forward-looking manner and in broad terms. *Collins v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 90. Additionally, the risk for potential harm is but a factor for the court to consider in its analysis. *Carroll v. Ark. Dep't of Human Servs.*, 85 Ark. App. 255, 148 S.W.3d 780 (2004).

Given this analysis, Jung's arguments are not persuasive. Here, the trial court was presented with evidence that Jung had not maintained stable employment at any time during the case. While she was employed at the time of the termination hearing, she obtained that employment only three days prior to the hearing. The only other employment she had during the course of the case was a three-month stint with Tyson. This lack of financial resources prevented her from obtaining stable housing or transportation and prevented her from keeping her child-support payments current.

The trial court was also presented with Jung's continued drug use throughout the case. Jung admitted that she used drugs at the beginning of the case but notes that she had several negative drug screens in April and May 2012. The trial court found the validity of the negative drug screens to be suspect. Our review of the record supports this suspicion. Jung submitted urine samples that tested negative for drugs. DHS suspected an invalid test because the urine samples did not register a proper temperature. The sample was then submitted to a pregnancy test to determine if the sample was in fact urine. The pregnancy test confirmed

that the samples were urine and were also negative for pregnancy. Yet, it appears from the record that Jung was pregnant at the time.[2] This discrepancy calls the validity of those tests into question. Moreover, Jung had only recently been released from an inpatient drug-treatment center and had been on her own and sober for only three weeks prior to the hearing. Even after her release, there was evidence presented that Jung may have attempted to provide the caseworker with an adulterated urine sample. This evidence calls into question the strength of Jung's new-found sobriety.

A parent's lack of stable housing or employment can demonstrate potential harm to a child, as can a parent's continued illegal-drug usage. *See, e.g.*, *Hall v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 245, 413 S.W.3d 542 and *Campbell v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 84, 426 S.W.3d 501. While there was some evidence that Jung was recently employed and sober at the time of the hearing, there was insufficient proof that, given her history, she could maintain employment or sobriety. As a result, it was not clear error for the court to find that there was potential harm if the child was returned to Jung's custody.

Jung next challenges the court's determination that there were sufficient statutory grounds to support termination. In order to terminate, in addition to the best-interest finding, the court must find by clear and convincing evidence that one or more statutory grounds for termination exists. *Drake v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 274, at 11, 427 S.W.3d 710, 716 (citing Ark. Code Ann. § 9-27-341(b)(3)(B) (Supp. 2013)). However, proof

---

[2]The evidence before the court at permanency planning indicated that Jung was pregnant again and that Evans was the father of the child. The urine samples in question were submitted after this hearing.

of only one statutory ground is sufficient to terminate parental rights. *Id.* (citing *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483).

Here, the trial court found several grounds upon which to support termination—one being that the child had been adjudicated dependent-neglected, had been outside Jung's care for over twelve months, and that Jung had failed to remedy the cause for removal, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)*(i)(a)*. There was sufficient evidence presented to support this ground. N.E. had been adjudicated dependent-neglected and was removed from Jung's custody in May 2012. One of the causes of removal was Jung's suspected drug usage. Jung continued to use drugs during the course of the proceedings and had only recently completed a drug-treatment program. Even after her completion of the program, there was evidence that she had attempted to falsify a random drug screen just two days prior to the termination hearing. This was sufficient to support the finding of a statutory ground for termination.

Affirmed.

GRUBER and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for

*Tabitha Baertels McNulty*, Office of Policy and Legal Services, for appellee.