

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-16-71

| | |
|---|---|
| CHARHON KERR<br>APPELLANT | **Opinion Delivered** May 18, 2016 |
| V. | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. JV-2011-793] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE LEIGH ZUERKER, JUDGE |
| | AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## RITA W. GRUBER, Judge

Charhon Kerr is appealing the Sebastian County Circuit Court's order terminating her parental rights to K.K. (born December 10, 2000) and C.M. (born September 4, 2002). She contends that the trial court erred in granting the termination because there was no evidence to establish that the Arkansas Department of Human Services ("DHS") engaged in meaningful efforts to correct the cause of the children's removal. She also argues that the trial court lacked evidence of adoptability and therefore that its best-interest determination was clearly erroneous. We affirm the court's finding regarding grounds, but we find merit in her second point, and we reverse and remand.

The case began on December 11, 2011, pursuant to an investigation prompted by a call to the Arkansas Child Abuse Hotline, and the children were removed from the home after Kerr tested positive for methamphetamine. The children were adjudicated dependent-

neglected on March 29, 2012, with a goal of reunification, and placed in the temporary custody of their maternal great-grandparents.

In a review order entered on August 15, 2012, the trial court found that DHS had made reasonable efforts to provide services to Kerr, including parenting classes, visitation, drug-and-alcohol assessment, psychological evaluation, drug screening, and drug-treatment referrals. The court found that the mother had partially complied with the case plan by attending parenting classes, obtaining a drug-and-alcohol assessment, obtaining a psychological evaluation, and submitting to drug screening. Kerr still did not have stable housing or sufficient income, and she continued to use illegal substances. In fact, the court found that Kerr had used marijuana within three days of the hearing and methamphetamine within two to three weeks of the hearing. Finally, the court found that Kerr had attended a residential drug program but left without completing the program.

The court held a permanency-planning hearing in December 2012 and changed the goal to termination of parental rights and adoption. The court found that Kerr still had insufficient income, continued to test positive for drugs, and had not completed parenting classes. The court again determined that DHS had made reasonable efforts to finalize a permanency plan and provide necessary services. DHS filed a petition for termination of parental rights on January 14, 2013.

However, Kerr began to turn things around at that point and, in a review order entered on March 15, 2013, the court found that Kerr had made "significant progress" in her case plan since the permanency-planning hearing and authorized a trial placement of the

2

SLIP OPINION

children with her. The children were returned to Kerr's custody after a review hearing held on May 16, 2013.

Kerr's rehabilitation was short-lived. Kerr reported to her caseworker that she had relapsed, and she tested positive for THC on August 27, 2013. K.K. later discovered what appeared to be methamphetamine under Kerr's bed in February 2014, and on March 12, 2014, Kerr tested positive for THC and methamphetamine. On March 14, 2014, DHS filed a petition for emergency custody, which the court granted that same day.

In a custody order entered on April 24, 2014, the trial court found that DHS had made reasonable efforts to provide services to Kerr to prevent the need for removal of her children from her custody, but that the services had not been successful because of Kerr's drug addiction and relapse into drug abuse. In an August 2014 permanency-planning order, the court changed the goal of the case to termination and adoption with a concurrent goal of permanent custody with a relative. The court found that Kerr had not complied with the case plan and had not successfully addressed the conditions that caused removal because she was still suffering from both mental-health issues and drug-abuse issues.

In a January 2015 review order, concerning review hearings held on September 25 and November 20, 2014, the court found that Kerr had made "some progress" and was attending counseling and visiting as permitted. The court set the concurrent goals of reunification with the mother and termination of parental rights and adoption. The court found that DHS had again made reasonable efforts to provide services to achieve permanency and that Kerr had made "some progress with the caseplan" by maintaining stable housing,

3

attending counseling, visiting with the children as allowed by their treatment providers, and submitting to random drug screens.

On April 2, 2015, DHS filed a petition for termination. After a termination hearing on June 25 and July 1, 2015, the court entered an order terminating Kerr's parental rights. The court based its decision on three grounds: (1) the children had been adjudicated dependent-neglected, they had continued out of the home in excess of twelve months, and despite a meaningful effort by DHS to rehabilitate Kerr and correct the conditions that caused removal, the conditions had not been remedied; (2) subsequent to the filing of the original petition, other factors or issues arose that demonstrated that the return of the children to Kerr was contrary to their health, safety, or welfare and that, despite the offer of appropriate services, Kerr had manifested the incapacity or indifference to remedy the issues or to rehabilitate her circumstances; and (3) Kerr subjected the children to aggravated circumstances: specifically, there was little likelihood that further services would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), (vii)(*a*), and (ix)(*a*)(*3*) (Repl. 2015).

In support of these grounds, the court found that the children had been removed from Kerr twice, both times due to her mental instability and drug use, and that Kerr had been referred for services to address these issues but still struggled with them. The court noted that Kerr had continued to use drugs and had admitted in the hearing that she had used marijuana as recently as a week before the hearing and had sold methamphetamine after the children's second removal. The court also found that Kerr's mental-health issues had increased since the

initial petition. The court stated at the hearing that she appeared visibly unstable and had refused to disclose her address to the court for unknown reasons. Finally, the court found that DHS had provided appropriate services to Kerr for a substantial period of time—over three years—but that she had not benefited from these services, and her circumstances had not improved. The court recognized that reunification had failed once and that there were no other services that DHS could provide to ensure that reunification would be successful a second time.

The court also found by clear and convincing evidence that termination was in the best interest of the children. The court stated that it had specifically considered the likelihood that the children would be adopted and specifically found that the children were adoptable. Finally, the court stated that it understood that the foster parents had expressed an interest in adopting the children, that the attorney ad litem recommended this, and that DHS intended to move forward with that plan.

We review termination-of-parental-rights cases de novo. *Wilson v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 666, at 7, 476 S.W.3d 816, 821. The trial court must make two findings by clear and convincing evidence: (1) at least one statutory ground must exist, and (2) it must be in the child's best interest to terminate parental rights. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential harm to the child if custody is returned to a parent. *Smith v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 753, at 4, 431 S.W.3d 364, 367. The appellate inquiry is whether the trial court's

finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Brown v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. Credibility determinations are left to the fact-finder, here the trial court. *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, at 7, 434 S.W.3d 371, 375.

## I. *Grounds for Termination*

Kerr contends that the trial court clearly erred in granting DHS's petition to terminate because there was no evidence that DHS engaged in "meaningful efforts" to correct the conditions that caused the children's removal. Specifically, she argues that DHS failed to provide appropriate services to her after the children were removed from her custody for the second time after the trial placement with her. Kerr contends that the first two grounds on which the trial court relied to terminate her parental rights—the failure-to-remedy ground and the subsequent-factors ground—required DHS to prove that it offered her services to help remedy the conditions that caused removal. She argues that DHS failed to do so.

The trial court's grounds for termination were based on its consideration of the entire four years in this case, not only on the time after the children had been removed from Kerr for the second time. Every review order the court entered in this case contained a finding that DHS had made reasonable efforts to provide appropriate services. Finally, and most importantly, the trial court found a third ground that does not require DHS to provide meaningful services. The trial court found that Kerr had subjected the children to aggravated circumstances: specifically, that there was little likelihood that further services would result in successful reunification. Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*)(*3*). Only one ground

is necessary to terminate parental rights. *Lowery v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 478, at 5–6. In support of this finding, the court noted that DHS had provided appropriate services to Kerr for a substantial period of time—almost four years—but that she had not benefited from those services, and her circumstances had not improved. The court recognized that reunification had failed once and there were no other services that DHS could provide to ensure reunification would be successful a second time. We hold that the court's finding is not clearly erroneous.

## II. *Best Interest*

Kerr also argues that the trial court clearly erred in finding that it was in the best interest of the children to terminate her parental rights because there was a complete lack of evidence introduced to establish that the children were adoptable. The trial court is not required to find by clear and convincing evidence that the children are adoptable but merely must consider the likelihood of adoption if parental rights are terminated. *Miller v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 239, at 4. While this court has not required that abundant evidence of adoptability be introduced—generally a caseworker's testimony that a child is adoptable is sufficient to support an adoptability finding, *id.*—we have held that "[c]onsideration requires evidence . . . or at least some finding by the trial court that other aspects of the best-interest analysis so favor termination that the absence of proof on adoptability makes no legal difference." *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 4.

Here, although the trial court found that the children were adoptable and stated that

SLIP OPINION

it understood that the foster parents had expressed an interest in adopting the children, there was no evidence introduced at the hearing to support this finding. The only evidence regarding adoptability was K.K.'s testimony. She testified that she wanted her mother's rights terminated and that she wanted her foster parents to adopt her and C.M. This simply does not constitute evidence regarding the *likelihood* that the children will be adopted. Further, the court made no finding that this absence of evidence of adoptability made "no legal difference" to the ultimate decision of what was in the children's best interest. Accordingly, given the absence of evidence and the failure of the court to determine that such absence made no legal difference, we have no choice but to hold that the trial court clearly erred when it found that termination of Kerr's parental rights to the children was in their best interest. It is unfortunate that the manner in which this issue was handled by all involved—given the longstanding rules of law on this issue—served only to penalize the children and their permanency.[1]

Affirmed in part; reversed and remanded in part.

GLADWIN, C.J., and KINARD, J., agree.

*Tina Bowers Lee*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.

---

[1]See *Fredrick v. Ark. Dep't of Human Servs.*, 2009 Ark. App. 652 (Gruber, J., concurring).