

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-16-137

| | | |
|---|---|---|
| JESSE EVERETT | | **Opinion Delivered** November 9, 2016 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, ELEVENTH DIVISION |
| V. | | [NO. 60JV-14-575] |
| | | HONORABLE PATRICIA JAMES, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | |
| | APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

## PHILLIP T. WHITEAKER, Judge

Jesse Everett appeals a Pulaski County Circuit Court order terminating his parental rights to his son L.E.[1] Everett's counsel has filed a motion to withdraw from representation and a no-merit brief pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2003) and Arkansas Supreme Court Rule 6-9(i) (2015), stating that there are no meritorious grounds to support an appeal. Counsel identified three adverse rulings: the termination decision, the denial of his request for additional time for rehabilitation, and the trial court's failure to make a relative placement. The clerk twice mailed a certified copy of counsel's motion and brief to Everett, informing him of his right

---

[1] Everett may have parental rights to two other children, R.E. and C.E. Everett's rights to these children were not terminated by this order, and they are not a subject of this appeal because they were living with relatives at the time of the initial removal and at the time of termination.

to file pro se points for reversal.[2] Everett failed to file his pro se points by the deadline specified in our rules.[3] His pro se points are, therefore, untimely and are not properly before us for review. Because there are no issues of arguable merit presented, we affirm and grant counsel's motion to withdraw.

The facts surrounding the removal of the child and the ultimate termination of parental rights are these. L.E. was removed from the care of Jordan Goff, L.E.'s mother, by the Department of Human Services (DHS) due to Goff's drug use and inadequate supervision. DHS filed a dependency-neglect petition to which Everett was named as a party. Everett appeared at the probable-cause hearing and testified that he was incarcerated at the time of L.E.'s birth, but that he believed he is L.E.'s father and agreed to take a paternity test.[4] Everett further admitted that he had a pending misdemeanor drug charge in Sherwood but insisted he did not have a drug problem. He was on parole from previous drug charges at the time of the probable-cause hearing. L.E. was adjudicated dependent-neglected on June 23, 2014, based on a stipulation of parental unfitness due to Goff's drug usage.

Throughout the course of the dependency-neglect proceeding, Everett was granted supervised visitation with L.E. twice a week, which was contingent upon negative drug screens. Everett was also ordered to submit to random drug screens; to complete a drug-and-

---

[2] The green card evidencing service was not returned on the first attempt, so a second attempt was made. The green card was returned on the second attempt.

[3] Rule 6-9 of the Arkansas Rules of the Supreme Court and Court of Appeals grants the appellant thirty days from the date the written notification from the Clerk is mailed to file his pro se points. Ark. Sup. Ct. R. 6-9(i)(3).

[4] The subsequent paternity test confirmed that Everett is L.E.'s biological father.

alcohol assessment, a counseling assessment, and a psychological evaluation; to complete parenting classes; to establish paternity; and to maintain stable housing and employment.

At times, the court noted that Everett had made some progress. However, the court also expressed concern that Everett had lied to the court about his drug usage, which created an apprehension that he was either using, selling, or stockpiling hydrocodone prescribed for his knee. By September 2014, Everett was incarcerated. His incarceration resulted in several delays of the proceedings due to irregularities in executing transport orders.

In August 2015, DHS filed a petition to terminate Everett's rights to L.E. The petition alleged first that Everett had not proved significant contacts with the juvenile sufficient for his parental rights to attach. In the alternative, DHS also alleged the following grounds for termination with respect to Everett: (1) that L.E. had been adjudicated dependent-neglected and had continued outside Everett's custody for more than twelve months and that, despite meaningful effort by DHS to rehabilitate him and correct the conditions which caused removal, the conditions had not been remedied; (2) that other factors had arisen subsequent to the filing of the dependency-neglect petition which demonstrated that return of the child to Everett's custody would be contrary to his health, safety, or welfare and that, despite the offer of appropriate family services, Everett had manifested an incapacity or indifference to remedy the subsequent issues; and (3) that Everett had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life.

After a hearing on the petition to terminate, the court entered an order terminating Everett's parental rights on the subsequent-factors and lengthy-incarceration grounds alleged in the petition. The court further found that, because L.E. was adoptable and that potential

SLIP OPINION

harm existed if L.E. were returned to Everett's custody, termination was in L.E.'s best interest. This appeal followed.

Our standard of review in termination-of-parental-rights cases is well settled. The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Fox v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 666, 448 S.W.3d 735; *Stockstill v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 427, 439 S.W.3d 95. As a result, the law places a heavy burden on the party seeking to terminate the relationship of a parent. *Fox*, *supra*.

Here, DHS sought to terminate Everett's natural rights as a parent. In order to terminate Everett's rights, DHS had to prove two things. First, that termination is in the best interest of the child, considering the likelihood that the child will be adopted if the parent's rights are terminated and the potential harm caused by returning the child to the custody of the parent. *Weatherspoon v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 104, 426 S.W.3d 520; Ark. Code Ann. § 9-27-341(b)(3)(A) (Repl. 2015). Second, the existence of one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). *Henson v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 225, 434 S.W.3d 371. Both of these requirements must be proved by clear and convincing evidence.

Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Fox*, *supra*. When the burden of proving a disputed fact in equity is by clear and convincing evidence, the question that we must answer on appeal is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly

SLIP OPINION

erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

## I. *Statutory Ground*

The trial court found sufficient evidence of two statutory grounds on which to base its termination of Everett's parental rights. However, only one ground must be proved to support termination. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). DHS proved the substantial-incarceration ground.

Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) provides for termination "when [t]he parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life[.]" This court looks at the length of the prison sentence, not the potential release date, when reviewing whether this statutory ground has been met. *Sanford v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 578, at 11–12, 474 S.W.3d 503, 510.

The uncontroverted evidence here is that, on May 3, 2010, Everett was convicted of possession of methamphetamine, third-offense possession of marijuana, third-offense possession of alprazolam, third-offense possession of diazepam, and third-offense possession of clonazepam. He was sentenced to ten years in prison with three years suspended. This sentence was to be served concurrently with his sentencing on three other criminal convictions. Everett served thirteen and one-half months of his eighty-four month sentence prior to his parole on April 20, 2011. He was reincarcerated in July 2014 for violating his parole. Everett testified that he was due to be released on either November 30 or December 4, 2015, upon completion of his drug-treatment program. No official documentation of his

5

potential release date was provided. At the time of the termination hearing L.E. was five years old, and Everett had already been in prison for almost half of L.E.'s life. Given that Everett was unable to remain out of prison for more than a few years and given the substantial amount of incarceration remaining on his original sentence, the trial court's determination that Everett had been sentenced in a criminal proceeding for a substantial portion of L.E.'s life was not clearly erroneous.

## II. *Best Interest*

Next, we must determine if there was sufficient evidence to support the trial court's best-interest finding. Here, the social worker testified that L.E. was adoptable and that there were over 150 families on the data-matching list, even taking L.E.'s reactive-attachment-disorder diagnosis into consideration. As for potential harm, Everett was incarcerated at the time of the hearing. He expressed his intent to stay either at Our House or his grandmother's home[5] upon his release, neither of which the court found to be suitable for L.E. During the short period of time that Everett was not incarcerated while L.E. was in foster care, he visited the child only three times and, once incarcerated, he made no effort to contact the child. Moreover, while Everett had nearly completed a substance-abuse treatment program at the time of the hearing, he attended the program while incarcerated, and there was no evidence that he would be able to maintain his sobriety once released. A parent's lack of stable housing or employment can demonstrate potential harm to a child, as can a parent's continued illegal-drug usage. *See, e.g., Jung v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 523, 443 S.W.3d 555

---

[5] The court on several occasions during the pendency of the case expressed concern that L.E.'s sibling was being cared for by the grandmother.

(holding that, while there was some evidence that Jung was recently employed and sober at the time of the hearing, there was insufficient proof that, given her history, she could maintain employment or sobriety.) As a result, it was not clear error for the court to find that there was potential harm if the child was returned to Everett's custody.

### III. *Other Adverse Rulings*

Counsel next addresses two potentially adverse rulings. The first relates to Everett's request for additional time to facilitate reunification. However, we have often stated that a child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Shaffer v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 208, at 6, 489 S.W.3d 182, 185; *Knuckles v. Ark. Dep't of Human Servs.,* 2015 Ark. App. 463, 469 S.W.3d 377; *Loveday v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 282, 435 S.W.3d 504. Here, the child had been out of the home for over fifteen months at the time of the termination hearing. Everett, at that time, had done little to comply with the case plan and had almost no contact with the child. He was incarcerated at the time of the termination hearing and did not have an appropriate home to return to upon his release from prison. While he was participating in a substance-abuse treatment program in prison, there was no guarantee that he could maintain sobriety once he left the drug-free institution.

Finally, counsel addresses Everett's request for L.E. to be placed with relatives rather than have his rights terminated. Arkansas law permits a trial court to set termination or adoption as the case goal even when a relative is available and requests custody. Ark. Code Ann. § 9-27-338(c)(1)–(7). Arkansas Code Annotated section 9-27-338(c)(1)–(7) lists the permanency goals that the circuit court is to consider in determining the best interest of the

children in an order of preference. Permanent relative placement is listed after termination and adoption for the court's preferential consideration, unless the child was already being cared for by a relative and certain other factors are found to exist. *See* Ark. Code Ann. § 9–27–338(c)(4) & (6). Thus, according to the public policy of this state, termination and adoption are preferred to permanent relative placement when, as here, the child is not in the care of a relative at the time of the termination hearing. No error occurred.

Based on the foregoing, the termination order is affirmed, and the motion to withdraw granted.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

No response.