SLIP OPINION



Cite as 2017 Ark. App. 380

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-17-147

| | |
|---|---|
| CAROLINE BARRIS<br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br>APPELLEES | **Opinion Delivered:** June 21, 2017<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, WESTERN DISTRICT<br>[NO. 16JJV-15-240]<br><br>HONORABLE CINDY THYER, JUDGE<br><br>AFFIRMED |

## RITA W. GRUBER, Chief Judge

Appellant, Caroline Barris, appeals from an order of the Craighead County Circuit Court terminating her parental rights to her daughter, KJ, born November 3, 2011. Her sole point on appeal is that the evidence was insufficient to support the circuit court's decision finding grounds for termination. We find no error and affirm the circuit court's order.

On August 10, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect after friends of appellant notified local law enforcement that appellant was behaving erratically. According to DHS's affidavit, appellant left KJ with friends while she went to work, although she did not tell the friends, who were sleeping, that she had done so. When the friends awoke and began sending texts to appellant about KJ, appellant responded by telling them to harm KJ rather than bother appellant at work. The following is an example of one of her many similar texts:

SO DO AWAY WITH HER, PUT HER OUTSIDE, STARVE HER, HURT HER, TAKE HER NEXT DOOR, BREAK HER ARM ALREADY OR KILL HER . . . PLEASE, IM A WORK AND YOU CALL CLICKING ABOUT MY CHILD CRYING PLEASE JUST KILL HER AND TAKE IT OUT ON HER BECAUSE SHE CRIES, I DON'T CARE, I SENT PARAMEDICS TO GET HER SO LEAVE HER OUTSIDE OR CUT HER UP TO SHUT HER UP OR MOLEST HER BIT DON'T CALL ME IM AT WORK, THERE ARE PLENTY OF WAYS TO KILL A 3 YR OLD.

When the DHS family services worker made contact with appellant, appellant "had bloodshot eyes," was unable to focus on a conversation, and "appeared to move slowly." Although the DHS worker requested a urine sample for a drug screen, appellant was unable to provide one.

The circuit court granted DHS's petition for emergency custody and on October 2, 2015, entered an order adjudicating KJ dependent-neglected based on parental unfitness due to appellant's "instability." The court also recognized that DHS had been involved with the family since 2004 regarding appellant's older child, who was currently in the custody of his father, and regarding KJ, who had been placed in a foster home from December 20, 2012, through April 15, 2014, due to failure to thrive. The court set the goal as reunification with a concurrent plan of "relative placement, permanency, and adoption."

In a review order entered on February 12, 2016, the circuit court found that DHS had made reasonable efforts to provide appropriate family services but that appellant was incarcerated and had failed to comply with the case plan. After a permanency-planning hearing in July 2016, the court entered an order finding that, although appellant had viewed "The Clock is Ticking" video and had submitted to a psychological evaluation, she had otherwise failed to cooperate with DHS or comply with the case plan. Specifically, she had tested positive for opiates and oxycodone without a prescription, and she had failed to visit

KJ, participate in parenting classes, submit to random drug screens, or obtain and maintain clean, safe, and stable housing. The court changed the goal to adoption and authorized DHS to pursue termination of appellant's parental rights.

At the termination hearing on December 8, 2016, Tina Green, appellant's caseworker, testified that appellant had been referred for counseling in Jonesboro, had attended an intake session in July 2016, but then had moved to Batesville without notifying the counseling office. DHS made a new referral for counseling for November 18, 2016, but appellant arrived 45 minutes late, and the appointment was rescheduled for November 23, 2016. Appellant failed to show up for the rescheduled appointment. Ms. Green also testified that appellant had not visited KJ since October 15, 2015. Although appellant had texted her once about setting up visitation, which was done, appellant did not show up for the visitation. Ms. Green said that appellant continually gave excuses for why she could not attend scheduled visitations. She stated that she had never seen appellant interact with KJ. Ms. Green also testified that appellant had never provided documentation regarding income. Further, she testified that appellant was living "from place to place" without a permanent address. Ms. Green also stated that she had not been able to administer any drug screens because of appellant's unstable housing and therefore she was not sure whether appellant was drug free. Ms. Green opined that it was in KJ's best interest for appellant's parental rights to be terminated. She testified that the main concern, and the problem that brought KJ into care—appellant's "mental stability"—had not been corrected. She testified that appellant had made no progress in her ability to maintain a stable home or stable work. The court asked Ms. Green about

adoptability, and Ms. Green responded that KJ was currently placed with relatives who wanted to adopt her and who had served as KJ's foster parents from December 2012 through April 2014.

Appellant testified that she had failed to visit KJ because she had been incarcerated from November 2015 through April 2016 and thereafter she had been at work when DHS had contacted her about visitation. Appellant also testified that she had lived with various friends and church members; she had lived at her current address for a week. She testified that she was "job hunting" and had "turned in paperwork" to move into her own place.

The court entered its order on December 9, 2016, terminating appellant's parental rights. The court found that DHS had proved four grounds for termination by clear and convincing evidence: (1) KJ had been adjudicated dependent-neglected and had continued out of the custody of appellant for twelve months and, despite a meaningful effort by DHS to rehabilitate appellant and correct the conditions that caused removal, appellant had failed to remedy the conditions; (2) KJ had lived outside the home of appellant for a period of twelve months and appellant had willfully failed to maintain meaningful contact with KJ; (3) appellant had abandoned KJ; and (4) other factors arose subsequent to the filing of the original petition that demonstrated placement of KJ with appellant was contrary to the child's health, safety, or welfare and, despite the offer of appropriate family services, appellant manifested incapacity or indifference to remedying the subsequent issues. Ark. Code Ann. § 9–27–341(b)(3)(B)(i), (ii), (iv), and (vii) (Repl. 2015). The court noted that the grounds for dependency-neglect were parental unfitness due to appellant's instability and specifically found

that appellant had not demonstrated that she had maintained employment, stable housing, or sufficient income to support herself and KJ. The court also found that, although she had submitted to a psychological evaluation, appellant had not followed the recommendations to completion and had missed several appointments. Finally, the court found that appellant had not visited KJ for over a year and that DHS had attempted to restart visitation on several occasions, but appellant had missed each one.

We review termination–of–parental–rights cases de novo. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). At least one statutory ground must exist, and there must be a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341. In making a "best interest" determination, the trial court is required to consider two factors: (1) the likelihood that the child will be adopted and (2) the potential of harm to the child if custody is returned to a parent. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, at 7–8, 444 S.W.3d 366, 371. On appeal, we determine whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *J.T. v. Ark. Dep't of Human Servs.*, 329 Ark. 243, 947 S.W.2d 761 (1997). Credibility determinations are left to the fact-finder. *Kerr v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346. Finally, the intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's

perspective. Ark. Code Ann. § 9-27-341(a)(3).

For her sole point on appeal, appellant contends that none of the four grounds found by the circuit court are supported by the evidence. Proof of only one statutory ground is sufficient to terminate parental rights. *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, at 5, 474 S.W.3d 510, 514. We turn to the first ground found by the court: adjudicated dependent-neglected, out of the home for twelve months, and failure to remedy the conditions that caused removal of the child. Appellant does not dispute that KJ was adjudicated dependent-neglected and was out of her custody for more than twelve months. She argues that DHS failed to demonstrate that it had provided services to rehabilitate her and correct the conditions that caused removal. Specifically, she contends that DHS failed to provide counseling in a timely manner because DHS did not make the first referral for counseling until July 2016, almost a year after KJ had been placed in DHS custody.

First, the circuit court's finding on this ground was not based solely on appellant's failure to attend counseling. The conditions that caused removal involved appellant's parental unfitness. The court found that the unfitness was due to appellant's instability. Appellant suffered from mental instability at the time KJ was removed from her custody, but appellant also suffered from, and continued throughout the case to suffer from, other instability relating to her housing and employment. Ms. Green testified that appellant had never provided documentation regarding income, that appellant was living "from place to place" without a permanent address, and that she was not sure whether appellant was drug free because she had not been able to administer any drug screens due to appellant's unstable housing. Appellant

herself testified that she had constantly changed housing and had been in her present residence, living with friends, for a week at the time of the hearing. The court specifically found that appellant had not demonstrated that she had maintained employment, stable housing, or sufficient income to support herself and KJ. All of these things relate to parental unfitness. With regard to appellant's mental instability, appellant was ordered in October 2015 to undergo a psychological evaluation and follow the recommendations. Because appellant was incarcerated from November 2015 through March 2016, appellant did not undergo the evaluation until May 2016. Appellant, not DHS, was responsible for this delay. Moreover, the court found that, although she had submitted to a psychological evaluation, appellant had not followed the recommendations to completion and had missed several appointments. Finally, appellant had failed to exercise visitation for over a year at the time of the hearing. We hold that the court's finding that appellant failed to remedy her parental unfitness due to her instability is not clearly erroneous. Because DHS was required to prove only one statutory ground, we do not address the other three grounds. *Shawkey v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 2, at 6, 510 S.W.3d 803, 807.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth* and *Mary Goff*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.