Cite as 2024 Ark. App. 197

# ARKANSAS COURT OF APPEALS
DIVISION III
No. CV-23-658

|  |  |
|---|---|
| CARISSA SHIPP | Opinion Delivered March 13, 2024 |
| APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72JV-22-84] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE DIANE WARREN, JUDGE |
| APPELLEES | AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Carissa Shipp appeals from a Washington County Circuit Court order terminating her parental rights to her three children—Minor Child 1 (MC1), born on February 27, 2022; Minor Child 2 (MC2), born on January 3, 2018; and Minor Child 3 (MC3), born on November 2, 2016.[1] On appeal, Shipp challenges only the circuit court's finding that termination is in the children's best interest. We affirm the termination order.

On February 27, 2022, the Arkansas Department of Human Services (DHS) received a Garrett's Law report that Shipp tested positive for methamphetamine and amphetamine at the time of MC1's birth, and on March 2, it exercised a seventy-two-hour hold on the

---

[1]The parental rights of Alfonso Vaca were also terminated, but he is not a party to this appeal. Vaca was found to be a parent of MC2 and MC3 because he is listed as the father on their birth certificates and to be a putative parent of MC1 whose rights had attached.

children. On March 7, DHS filed a petition for emergency custody and dependency-neglect. The affidavit in support of the petition set out the previous history with the family, including Garrett's Law reports when Shipp tested positive for methamphetamine when MC2 and MC3 were born. When the family service worker (FSW) made contact with Shipp at the hospital on February 28, Shipp admitted using methamphetamine several days prior to MC1's birth. The ex parte order for emergency custody was granted on March 7.

In an April 12 order, the circuit court found that probable cause existed and continued to exist and that it was in the best interest of the children to remain in DHS custody. The circuit court also found that DHS had been involved with the family since 2016 and provided numerous services but that the services did not prevent removal because Shipp tested positive for methamphetamine and amphetamine at the time of the MC1's birth, DHS had a history of being unable to locate Shipp, and Shipp had not demonstrated stability and sobriety to safely parent. The circuit court found that Shipp's drug use "seriously impairs her ability to supervise, protect, and care for the children."

In a May 23 order, the circuit court adjudicated the children dependent-neglected due to parental unfitness because Shipp tested positive for methamphetamine and amphetamine following MC1's birth, noting the prior Garrett's Law reports and DHS's involvement with the family. The court set a goal of reunification and ordered Shipp to comply with the approved case plan. The order also provided that Shipp had an untreated substance-abuse issue and was currently in inpatient treatment.

On August 7, the circuit court entered an agreed review order and continued the goal of reunification, finding that safety concerns prevented a trial placement with, or return of custody to, Shipp because she was detained in the Washington County jail and awaiting court. A permanency-planning hearing was held on January 10, 2023. The circuit court found that Shipp had made significant progress in completing services; however, the circuit court changed the goal of the case to adoption in light of Shipp's recent sentence of seventy-two months in the Arkansas Department of Correction (ADC), which the circuit court found to be a significant portion of the children's lives. The circuit court further found that it was unlikely that the children would be able to be returned within a reasonable amount of time. DHS filed a petition for termination of parental rights on February 24, asserting multiple statutory grounds—failure to remedy, subsequent factors, aggravated circumstances, and incarceration.

A termination hearing took place on March 28. Whitney Patterson, the FSW assigned to the case, testified that Shipp was in partial compliance with the case plan. Patterson said that Shipp had been incarcerated in West Memphis since August 2022 and was serving a six-year sentence. Prior to August 2022, Shipp had been detained at the Washington County jail since April 2022. Patterson testified that the children had been placed together in a foster home since May 2022 and had developed a significant bond with their foster parents, who expressed an interest in adopting them. Patterson said that the children are adoptable.

Shipp confirmed that she was incarcerated at the East Arkansas Correctional Detention Center and had been there since August 9, 2022. She said that she was

3

participating in the year-long drug-treatment program and thought she would be released on August 8, 2023. Shipp described an "intense" drug-treatment program in which she received individual counseling with a licensed therapist, participated in peer counseling, and attended NA meetings. Shipp testified that she was "progressing substantially" in the program. She said that she was enrolled at Shorter College and had taken advantage of employment-related opportunities while incarcerated, which included taking the National Career Readiness test and obtaining her forklift certification and OSHA-10 safety certificate. Shipp visited weekly with the children (by Zoom) and maintained contact with the foster parents.

Shipp recognized that she has been incarcerated for most of the case and that she was sentenced in July 2022 for possession of drugs, possession of drug paraphernalia, and forgery. Shipp said that she expected to be released in four months and asked the court to give her the opportunity once released to show that she could remain sober and be a stable parent who could provide for her children. Although she admitted that her sentence was for six years, Shipp claimed that her sentence "is up August 9th of this year because of the judicial transfer," and she would then be on parole. When asked what would happen if she did not complete the one-year program, Shipp said that it was "not an option" for her but acknowledged that some people fail. Shipp said that upon her release, she would voluntarily enter a transitional-living facility for a period of time until she could find employment and housing and become stable, which she thought would take four months.

After taking the case under advisement, the court terminated Shipp's parental rights in a July 3 order, which was amended on July 7 and July 19. The court found that DHS had

proved the incarceration ground by clear and convincing evidence and that termination was in the best interest of the children, finding that the children are adoptable and that the potential harm of returning the children to Shipp was exposure to illegal drugs. This appeal followed.

We review termination-of-parental-rights cases de novo. *Bevell v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 138, at 6, 662 S.W.3d 259, 264. We will not reverse the circuit court's decision unless its findings are clearly erroneous. *Perry v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 323, at 10, 669 S.W.3d 865, 872. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's best interest. Ark. Code Ann. § 9-27-341 (Supp. 2023). In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential harm to the child if custody is returned to the parent. *Brown v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. Credibility determinations are left to the finder of fact. *Kerr v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative;

the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Schaible v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.*, 444 S.W.3d at 371. Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*, 444 S.W.3d at 371.

On appeal, Shipp challenges only the sufficiency of the evidence supporting the circuit court's best-interest finding, specifically the potential-harm prong. Shipp argues that DHS failed to prove that she posed a risk of harm to her children. The circuit court found that the "potential harm of returning the children to [Shipp] is that they would be exposed to illegal drugs." Although she acknowledges that the case was opened due to her substance abuse, Shipp argues that there was no evidence presented that she continues to have a substance-abuse issue that would expose her children to potential harm. She states that she entered an inpatient treatment program soon after the case was opened; and after being incarcerated, she began a one-year treatment program and attends counseling and support groups. Shipp points to her testimony that she is committed to maintaining her sobriety "once released."

Shipp acknowledges that she was incarcerated at the time of the termination hearing and custody could not be returned to her that day. However, she cites *Friend v. Arkansas Department of Human Services*, 2009 Ark. App. 606, at 12, 344 S.W.3d 670, 677, in which this court stated that "[a]lthough imprisonment imposes an unusual impediment to a normal parental relationship, it is not conclusive on the issue of termination." Recognizing that her

6

incarceration did not toll her responsibilities as a parent, Shipp states that the court should have determined that she utilized the resources available to maintain a close relationship with the children. Shipp points to all the services that she took advantage of while incarcerated and that she was diligent in advocating for appropriate visitation with her children. Shipp states that her efforts show it is not an "unreasonable presumption" that she could start a transition to reunification soon after she is released.

Shipp's reliance on *Friend* is misplaced because it addressed whether DHS failed to provide services to the appellant while incarcerated and noted that a parent's obligation to comply with reunification orders was not tolled due to incarceration. Moreover, this court has affirmed a potential-harm finding based on incarceration because the lack of stable housing and employment due to incarceration are sufficient to prove potential harm. *See, e.g., Martin v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 508, at 10, 657 S.W.3d 881, 887 (citing *Brumley v. Ark. Dep't of Hum. Servs.*, 2015 Ark. 356, at 10–12).

Inasmuch as Shipp is arguing that the circuit court's finding is erroneous because there was no evidence she continued to use drugs, the termination order noted that "[d]espite participation in recovery programs, she has not yet demonstrated that she is able to maintain sobriety outside of a controlled environment." In addition, under a de novo review, the entire record is open for our review. *Myers v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 46, at 16–17, 660 S.W.3d 357, 369. A review of the record reveals that the testimony established that the circuit court had ample evidence of potential harm to support its best-interest finding. Although Shipp testified that she was four months shy of completing the substance-

abuse program, there was no evidence that she would be able to maintain her sobriety once released. *Everett v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 541, at 6, 506 S.W.3d 287, 291 ("[W]hile Everett had nearly completed a substance-abuse treatment program at the time of the hearing, he attended the program while incarcerated, and there was no evidence that he would be able to maintain his sobriety once released. A parent's lack of stable housing or employment can demonstrate potential harm to a child, as can a parent's continued illegal-drug usage.").

Shipp's argument on appeal is essentially a request for more time. However, a child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances. *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 8–9, 585 S.W.3d 725, 730. Here, the children had been out of the home for more than a year, and Shipp was serving a six-year sentence. Although Shipp claimed that she would be released in four months and that it was "not an option" for her not to complete the program, she recognized failure was a possibility for some participants. Shipp acknowledged that, even if she was released in four months, she would then have to obtain housing and employment. A parent's lack of stable housing or employment can demonstrate potential harm to a child, as can a parent's continued illegal-drug usage. *See, e.g.*, *Jung v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 523, 443 S.W.3d 555 (holding that, while there was some evidence that Jung was recently employed and sober at the time of the hearing, there was insufficient proof that, given her history, she could maintain employment or sobriety). Given Shipp's history and circumstances, we cannot say the circuit court's potential-harm finding is clearly erroneous.

Affirmed.

HARRISON, C.J., and MURPHY, J., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.