Cite as 2026 Ark. App. 44

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-511

| | |
|---|---|
| WILLIAM RAYMOND<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered January 21, 2026<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION<br>[NO. 60JV-23-798]<br><br>HONORABLE TJUANA BYRD MANNING, JUDGE<br><br>AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

William Raymond appeals the Pulaski County Circuit Court's order terminating his parental rights to Minor Child 1 (MC1) (DOB 12/11/15), Minor Child 2 (MC2) (DOB 07/06/18), and Minor Child 3 (MC3) (DOB 06/18/19). He contends that the circuit court clearly erred in finding that termination was in their best interest. We affirm.

On August 30, 2023, Tamera Walker, a family-service investigator from the Arkansas Department of Human Services (DHS), went to the home of Candice Giles, the mother of Raymond's three children, to speak with her about a report that had been made.[1] In Walker's affidavit attached to DHS's September 5, 2023 petition for ex parte custody and dependency-

---

[1]Giles, who passed away several days after the children were taken into DHS custody, was also the mother of twins, Minor Child 4 (MC4) and Minor Child 5 (MC5) (DOB 07/03/17), who are not Raymond's children and are not part of this appeal.

neglect, she stated that Giles was crying and told her that Raymond made her go to court and sign away her rights to her children. Walker said Giles was slurring her words and told Walker that she had "done cocaine" that day.

Walker said that Raymond was at Giles's home packing his children's clothing to take them with him. He told Walker that he was tired, that he had been trying to get help with the children, and that "no one would help." When Walker saw that Raymond was leaving with MC1, MC2, and MC3 and not the twins, Walker told Raymond that if he left the twins, they would be taken into DHS custody because Giles was "under the influence." Raymond left the home with all five children.

Walker stated that when she went back inside the home to finish her conversation with Giles, Giles said it wasn't "fair" for Raymond to take the children because he had smoked cocaine with her that day. Walker then called Raymond and asked him to return to Giles's home, which he did. When Walker informed Raymond that he needed to be drug tested because of Giles's allegation, Raymond said he would take the test but started yelling and asking why no one "helps" him. Despite Walker's continuing to ask him to take the test, Raymond walked out of the house and headed toward his three children who were inside his vehicle. Walker told him that all five children were being taken into DHS custody, he needed to remove his three children from the truck, and she would call law enforcement if he refused. Raymond drove away with MC1, MC2, and MC3, leaving the twins at the house. Walker called law enforcement, who subsequently located Raymond's children. All five children were placed in DHS custody because Giles and Raymond were under the influence

of drugs and Raymond had fled with his children after DHS placed "a hold" on them, and Raymond was charged with three counts of interfering with custody.[2]

In an order entered on October 10, the circuit court found that probable cause supported removal of the children, specifically noting that it could not place Raymond's children with him because of uncertainty about his substance use and concerns about domestic violence in the home. On October 30, DHS filed an amended petition for dependency-neglect incorporating the allegations contained in the original petition and adding information from a hotline report made on October 7. The report concerned MC2's attempt to place his penis in his sibling's mouth, the children's statement that Raymond showed them videos of men doing this to women, and their report of witnessing Giles and another woman having sex with Raymond. The amended petition alleged that the children were dependent-neglected and at a substantial risk of serious harm as a result of sexual abuse, sexual exploitation, neglect, and parental unfitness.

On February 14, 2024, the circuit court entered an order adjudicating the children dependent-neglected on the bases of neglect, parental unfitness, and sexual abuse and exploitation. The court awarded no visitation between the children and Raymond unless a therapist assessed and recommended that visitation was appropriate. Raymond appealed the

_____

[2]Walker's affidavit further stated that DHS had been involved with the family since 2019 and included allegations against Giles and Raymond for neglect, inadequate shelter, substance misuse, environmental neglect, and failure to provide food. In 2020, Raymond went to a drug-rehabilitation center but was dropped from the program for leaving the facility for an hour and testing positive for amphetamines and cocaine on his return.

adjudication order, which we affirmed. *See Raymond v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 529, 700 S.W.3d 219.

After a review hearing on April 4, the circuit court found that Raymond had failed to maintain contact with DHS. After a July 16 review hearing, the court continued its order prohibiting Raymond from having family time without a therapist's recommendation. After a final review hearing on January 16, 2025, the court found that Raymond was unfit and that the children's safety could not be protected if they were returned to him, that the children were in appropriate placements meeting their special needs and best interests,[3] and that DHS had received a letter from a therapist recommending no family time between Raymond and the children. The court found that Raymond had not completed services, especially substance-abuse treatment; that there was no evidence of any "real progress" on his part; that he was living in Batesville at an address he did not want to disclose; and that he had pending criminal charges in Saline and Pulaski Counties. The court additionally found that there were no viable family members to appoint as guardian, and it changed the goal to adoption with a concurrent goal of guardianship, noting that the goal had never been reunification and that there was no evidence that would allow the court to consider the goal of reunification.

On March 14, DHS and the attorney ad litem filed a joint petition for termination, and the court held a hearing on the petition on April 17. Raymond testified that he had

---

[3]The court found that MC2, MC4, and MC5 were in specialized foster-home placements; MC3 was in a fictive-kin placement; and MC1 was "separate from the others."

4

been in jail in Saline County since January 29 on charges of possession of a controlled substance and had a trial set for May. He also admitted that he had pending charges in Pulaski County. He said that he had tested positive for "cocaine, benzos . . . and PCP" in October and again tested positive for drugs in January before he was incarcerated. He said that he had not completed substance-abuse treatment and had attended only one session of counseling because DHS "never called [him] back for a follow-up." He said that he wanted to be reunified with his children.

Wanisha Kizer, the DHS family-service worker on the case, testified that DHS had provided services to the family since 2019. She said that Raymond had completed a drug-and-alcohol assessment and a psychological evaluation. The recommendation from the assessment was inpatient treatment, and the recommendation from the evaluation was individual counseling, substance-abuse treatment, and parenting classes. To her knowledge, Raymond had not participated in any of the recommended services. She said that he had "never [taken] responsibility for anything in this case" and had been minimally compliant. She said that if Raymond was released from incarceration, there would be potential harm to the children if placed with him due to Raymond's history of substance abuse, his residential instability, and his exposing the children to sexual abuse.

Kieonda McFadden, an adoption specialist for DHS, testified that the children are adoptable and that there were no barriers to adoption. She said that she had run a data match on all five children together and found two prospective homes. She also ran a data match for MC3 and found 146 prospective homes and four prospective homes for the other

5

four children as a sibling group. She explained that she did not run a match for each of the other children individually because she "was not notified that they would be separated." She said that MC3 had been placed separately; therefore, she ran a separate data match on MC3.

On June 2, the circuit court entered an order terminating Raymond's parental rights on the grounds of twelve-months failure to remedy; subsequent factors; and aggravated circumstances—little likelihood. Ark. Code Ann. § 9-27-341(b)(3)(B)(i), (vii) & (ix) (Supp. 2023). Further, the circuit court found termination of parental rights was in the children's best interest, specifically that they are adoptable and that returning them to Raymond's custody posed a risk of potential harm. This appeal followed.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, at 6, 396 S.W.3d 272, 276. We will not reverse the circuit court's decision unless its findings are clearly erroneous. *Perry v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 323, at 10, 669 S.W.3d 865, 872. An order terminating parental rights must be based on a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's best interest. Ark. Code Ann. § 9-27-341. Credibility determinations are left to the finder of fact. *Kerr v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346.

The intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark.

Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Schaible v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 541, at 8, 444 S.W.3d 366, 371. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.*, 444 S.W.3d at 371. Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*, 444 S.W.3d at 371.

Raymond's sole point on appeal is that there was insufficient evidence to support the circuit court's finding that termination is in the children's best interest. Raymond recognizes the requirement for the circuit court to consider potential harm and adoptability, and he does not challenge the court's consideration of either in this case. Rather, he argues that this court has stated that the circuit court must also consider the impact termination has on sibling relationships in its best-interest analysis, and he argues that the circuit court did not do so in this case.

He points to the testimony of McFadden, the adoption specialist, who stated that there were only two potential matches for the entire sibling group. He argues that DHS was unable to place the children together throughout the case and that it is unlikely DHS will find an appropriate adoptive home for all the children. He also argues that there was no testimony as to the special needs of the children and whether it was in their best interest to be adopted together or separately. He asserts that we must reverse because the circuit court failed to consider how its termination decision would affect the significant bond between the children. However, Raymond failed to present this argument to the circuit court;

7

therefore, it is not preserved for our review. *Lyall v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 81, at 20, 661 S.W.3d 240, 252.

Affirmed.

HIXSON and BROWN, JJ., agree.

*Jennifer Oyler Olson*, Arkansas Commission for Parent Counsel, for appellant.

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.