Cite as 2023 Ark. App. 549

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-484

| | | |
|---|---|---|
| TIFFANY BAKER | | Opinion Delivered November 29, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE CLARK COUNTY CIRCUIT COURT |
| V. | | [NO. 10JV-22-5] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE BLAKE BATSON, JUDGE |
| | APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Tiffany Baker appeals the Clark County Circuit Court's order terminating her parental rights to Minor Child 1 (MC1), born on March 15, 2006, and Minor Child 2 (MC2), born on February 27, 2007. Baker challenges only the circuit court's finding that termination was in the best interest of MC1 and MC2. Specifically, she contends that the court's best-interest finding was clearly erroneous because (1) the circuit court found the children were not likely to be adopted and did not make an alternative finding that adoption was legally irrelevant, (2) termination would sever their relationship with their maternal

grandmother, and (3) termination did not serve the purpose of the Juvenile Code but was implemented to punish her. We affirm the circuit court's order.[1]

On March 1, 2022, the Arkansas Department of Human Services (DHS) filed a petition for dependency-neglect contending that the removal of MC1 and MC2 from Baker's custody was necessary due to neglect and parental unfitness. The affidavit attached to the petition explained that DHS had opened a dependency-neglect case in July 2021 involving MC3, Baker's youngest child and a sibling of MC1 and MC2. All three children had been living with their legal guardian and maternal grandmother, Michelle Sims. In July 2021, MC3 had been ordered into DHS custody after a family-in-need-of-services (FINS) court hearing, where Sims testified that MC3 has severe behavioral problems and that she was concerned about her safety and the safety of others in her home. The circuit court exercised an emergency hold on MC3 and placed him in foster care.

The affidavit further stated that on August 26, 2021, Sims filed a petition to terminate her guardianship of MC1, MC2, and MC3, which was granted. Custody of MC1 and MC2 was returned to Baker. MC1 and MC2 refused to follow Baker's rules, left home without permission, and were gone for two or three days at a time. The children said Baker was "not their mother because she was not active in their lives for over twelve years." DHS opened a

---

[1]This case is the companion case to *Baker v. Arkansas Department of Human Services*, 2023 Ark. App. 550, also handed down today, in which Baker has appealed the termination of her parental rights to Minor Child 3 (MC3), born on December 29, 2007. The cases proceeded under different case numbers with two termination orders and two notices of appeal. However, a single termination hearing was held for all three children. The children's father is deceased.

protective-services case for Baker, MC1, and MC2 and provided parenting-program services, resources for housing, acute-residential-treatment referrals, referrals for private placement of children, family counseling, and home visits, only some of which Baker pursued.

On January 12, 2022, MC1 was not attending school, and Baker reported her as a runaway. On February 14, MC1 got into a fight at school and refused to go with Baker after the school called Baker to come get her; she finally agreed to stay with a friend. The next day, Baker contacted DHS and said that she could no longer provide care to MC2 and could not handle his behavior. Baker also reported to DHS that the children were better off if she was dead, she was leaving MC2 at home, and she did not want anyone to call or try to locate her. On February 16, Baker called the Pulaski County Sheriff's Department to help with MC2, but when they arrived, MC2 had run away. He returned the next day and was transported to Rivendell for an assessment. After he was released, MC1 and MC2 were removed from Baker's custody and placed in the custody of DHS.

MC1 and MC2 were adjudicated dependent-neglected on the basis of parental unfitness in an order entered on April 11. The circuit court set a goal of reunification with Baker. An agreed review order was entered on August 15 in which the court continued the goal of reunification. The court found Baker was unfit at that time and had no stable housing, employment, or transportation. The court also found that DHS had provided, offered, or referred services; attempted home visits; and made reasonable efforts to finalize a permanency plan for the juveniles.

The circuit court entered another agreed review order on November 7, again finding Baker unfit but continuing the goal of reunification. However, the court warned Baker that unless she made significant progress before the scheduled permanency-planning hearing in January 2023, DHS would recommend a goal change to termination. The DHS report attached to the order noted that MC1 was in a qualified residential treatment program in Little Rock and adjusting well, although she had been unable to maintain a job due to drug screens that were positive for marijuana. MC1 was receiving counseling, completing a transitional life-skills training course, and taking daily medication. MC2 was in a residential treatment facility in Forrest City where he struggled to follow rules, was physically aggressive toward residents and staff, and walked off campus without permission.

On January 9, 2023, the court held a permanency-planning hearing and changed the goal for MC1 and MC2 to adoption. The court determined that Baker had not complied with the case plan and orders of the court, finding that she had used methamphetamine since the last review hearing, was not employed, lacked stable housing, and had unreliable transportation. A week later, DHS filed a petition to terminate Baker's parental rights to MC1 and MC2.

The court held a termination hearing for all three children on April 3. Baker admitted that she used methamphetamine one time during the case, contested the drug screens that she failed, denied that she refused to submit to random drug testing, and made excuses for why she could not go to inpatient drug treatment. She testified that Sims had guardianship

4

over MC1, MC2, and MC3 for eleven years and blamed Sims for the children's behavioral problems.

Sims testified that she obtained guardianship over the children in 2011 because Baker had recently left her husband, was homeless, and was using methamphetamine. Sims stated that she raised the children until 2021 when she filed the FINS petition because she could not control MC3. Thereafter, she began to have problems with MC1 and MC2, and ultimately, she decided to terminate the guardianship. Sims stated that she had not contacted MC1 or MC2 since they had been taken into DHS custody but that she would like to have a relationship with her grandchildren.

Laura Mergele, the DHS family-service-worker supervisor, testified that Baker tested positive for amphetamine and buprenorphine in October 2022 and methamphetamine and amphetamine in December 2022 and that she refused to show up for random drug testing. Mergele stated that five appointments were scheduled for Baker for a psychological evaluation, but Baker did not attend any of them. Regarding MC1 and MC2, Mergele testified about the behavior problems MC1 and MC2 have and the treatment they were receiving. She said that MC1 and MC2 did not want to return to their mother's custody and did not want to be adopted. Instead, they wanted to learn to be independent. Mergele was asked why DHS was recommending termination if adoption was not likely, and she said:

> Because through the life of the case, therapists have noted that when the kids have contact with their mom, then they dysregulate, they struggle, they have more behaviors and acting out. And therapists have noted that for the kids to move forward in their life and in therapy, they need closure and the ability to know, especially for,

like [MC1], that they don't have to have contact with her. . . . And, so, it's – it's for their mental health and their best interest for their lives.

Mergele was also asked why an order prohibiting Baker from initiating contact with the children (instead of termination) would not be sufficient, and Mergele stated that the children needed "finality so they can move forward." Finally, Mergele testified that if MC1 and MC2 wanted to be adopted, they would be adoptable.

On April 20, the circuit court entered an order terminating Baker's parental rights to MC1 and MC2 on the grounds of twelve months failure to remedy; other subsequent factors; and aggravated circumstances—little likelihood of reunification. The court also found that termination of Baker's parental rights is in the best interest of MC1 and MC2, stating that it considered all relevant factors, including the likelihood that the juveniles would be adopted if parental rights were terminated and the potential harm that could be caused by returning the juveniles to Baker. Regarding adoptability, the court provided the following explanation:

> As to the juveniles' adoptability, the Court finds that the juveniles are not likely to be adopted, because the juveniles have significant behavioral barriers to adoption However, the Court finds that the juveniles do not wish to be adopted, but rather to remain in Department custody, continue to avail themselves of the Department's Transitional Youth Services, and to engage in services toward the goal of APPLA.[2] Moreover, the Department continues to provide mental and behavioral health services to the juveniles, which could improve their potential to become adoptable.

Finally, the court found that the juveniles shall continue in the care and custody of DHS, that the permanency plan shall be APPLA, and that DHS is authorized to consent to the

---

[2]APPLA is an acronym for another planned permanent living arrangement.

6

adoption of the juveniles without Baker's consent. Baker brings this appeal from the court's order.

We review termination-of-parental-rights cases de novo. *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272. We will not reverse the circuit court's decision unless its findings are clearly erroneous. *Perry v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 323, at 10, 669 S.W.3d 865, 872. An order terminating parental rights must be based upon a finding by clear and convincing evidence that one of the grounds stated in the termination statute is satisfied and that the sought-after termination is in the children's best interest. Ark. Code Ann. § 9-27-341 (Supp. 2023). Credibility determinations are left to the finder of fact. *Kerr v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 271, at 6, 493 S.W.3d 342, 346.

Baker does not appeal the court's findings of statutory grounds for termination. Her appeal is a narrowly targeted challenge to the court's best-interest finding. She contends that the court's finding that termination was in the juveniles' best interest was clearly erroneous because it found that MC1 and MC2 were not likely to be adopted and did not make an alternative finding that adoption was legally irrelevant; termination jeopardized the juveniles' relationship with their grandmother; and it did not serve the permanency purpose of the Juvenile Code "since they did not need to be freed for adoption" and suggests that the court's decision was implemented for punishment.

We first address Baker's challenge to the court's consideration of adoptability. In making a best-interest determination, the circuit court is required to consider two factors: (1) the likelihood that the child will be adopted, and (2) the potential harm to the child if

7

custody is returned to a parent. *Brown v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 725, at 4, 478 S.W.3d 272, 275. The law does not require the circuit court to find that the juveniles are adoptable in order to terminate a parent's rights. In *McDaniel v. Arkansas Department of Human Services*, 2013 Ark. App. 263, at 4, this court held that adoptability is not an essential element of proof in a termination case. It is merely a factor that must be considered by the circuit court in determining the best interest of the child. *Id.* at 4–5. The fact that children are not up for adoption, standing alone, does not preclude this court from affirming the termination due to the potential harm the parent poses. *Lyall v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 81, at 19, 661 S.W.3d 240, 252.

Rather, this court is required to consider adoptability and find by clear and convincing evidence that termination of parental rights is in the best interest of the children. *Rocha v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 454, at 12, 637 S.W.3d 299, 308. The polestar is that termination of parental rights must, after consideration of all relevant circumstances including adoptability, be shown to be in the child's best interest. *Grant v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 636, at 13, 378 S.W.3d 227, 233.

The circuit court clearly considered adoptability in this case as evidenced by its paragraph explaining its consideration. The court noted that adoption was not likely due to behavioral barriers, but it also found that the barriers to adoption were likely to be reduced with the juveniles in DHS custody because the services being provided to the juveniles "could improve their potential to become adoptable." Moreover, Mergele, the DHS family service worker, testified that if MC1 and MC2 wanted to be adopted, they "would be adoptable."

Mergele also testified, however, that neither MC1 nor MC2 wants to be adopted. She said they both want to learn how to be independent and want their mother's parental rights to be terminated. The circuit court found that MC1 and MC2 were at risk of potential harm should they be returned to Baker's custody in light of her drug use and instability, and Baker does not challenge that finding on appeal. Therefore, we hold that the circuit court sufficiently considered the adoptability factor and that it did not clearly err in concluding that termination was in the best interest of MC1 and MC2.

Baker also contends that termination of her parental rights jeopardized the juveniles' relationship with Sims, which she argues is contrary to their best interest. In support of her argument, she cites our decisions in *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383. We disagree that the circumstances in this case are similar to those in either *Caldwell* or *Lively*. The issue in both *Caldwell* and *Lively* was whether termination of the father's rights was in the children's best interest when there was no question of permanency given that the mother had custody, the paternal grandparents had a strong bond with the children, and the grandparents had been the most stable influence in the children's lives. Termination of the father's rights in those cases was not necessary for the children to have permanency. They already had permanency with their mother. Here, the children were not in Baker's permanent custody or in any parent's custody. They were in DHS custody.

Moreover, termination of Baker's rights was not involuntarily severing a strong bond with a grandparent. Sims's voluntary decision to terminate her guardianship of the juveniles

is what initiated this dependency-neglect case and the resulting termination of Baker's parental rights. Sims admitted at the hearing that she had not contacted MC1 or MC2 since they had been placed in DHS custody. Sims said she had not heard from MC2 in a long time but that she had received text messages from MC1. Sims stated that she wanted the children to get the help they needed and "whatever's in their best interest." And the evidence at trial indicated she could continue to have a relationship with MC1 and MC2 if Baker's rights were terminated. Mergele testified that they could continue this relationship if they desired. The issues in *Lively* and *Caldwell* are not a concern here.

Finally, Baker argues that termination is not in the children's best interest because it does not serve the purpose of the Juvenile Code, which is to clear a child for permanency. Ark. Code Ann. § 9-27-341(a)(3) (Supp. 2023). She claims DHS terminated her parental rights to MC1 and MC2 because "she had not checked all the boxes, even though the minors did not need to be cleared for adoption, and they had a permanency plan that would allow achievement of the code's purpose without termination being implemented." She further claims that this is a case where "two juxtaposed women with vastly different socioeconomic and lifestyle histories faced the exact same failures and lack of control over the minors, and yet [Sims] was regarded as the 'life-long' appropriate point of contact, and [Baker] was vilified and stripped of her parental liberty." Baker claims that she was singled out and that the termination of her parental rights "smacks" of punishment.

There is no evidence in the record to support Baker's claim that the circuit court terminated her parental rights to punish her. Rather, the circuit court's order demonstrates

10

that it appropriately considered the best-interest factors—including adoptability and potential harm—when finding termination of Baker's parental rights was in the best interest of MC1 and MC2.

Additionally, section 9-27-341(a)(3) refers to permanency, not adoption. At the time of the hearing, MC1 was seventeen years old and MC2 was sixteen. Mergele testified that MC1 and MC2 wanted closure and finality, which meant termination of Baker's parental rights. Mergele said that MC1 had a plan for her life—to finish high school and go into the military—and MC1 thinks it is in her own best interest to terminate Baker's parental rights. MC2 also told Mergele that he does not want to return to his mother's care, he knows he needs help, and he cannot get that help from Baker. He is also considering the military because he wants more structure in his life. Mergele said that the therapists throughout the case noted that when the children have contact with Baker they struggle, "dysregulate," and act out. Mergele said the children's therapists noted that they need closure and the certainty that they do not have to continue contact with Baker, and the therapists opined that termination of parental rights was best for the children's mental health. Mergele testified that termination was necessary for the children to move forward. We hold that the circuit court's best-interest finding in this case is consistent with the purpose of the Juvenile Code, was not designed to punish Baker, and is not clearly erroneous.

Affirmed.

ABRAMSON and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

11

*Dana McClain*, attorney ad litem for minor children.