Cite as 2025 Ark. App. 209

# ARKANSAS COURT OF APPEALS
## DIVISION IV
#### No. CV-24-711

| | |
|---|---|
| STACY LEWIS<br><br>APPELLANT<br><br>V.<br><br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | Opinion Delivered April 9, 2025<br><br>APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 46JV-22-46]<br><br><br>HONORABLE L. WREN AUTREY, JUDGE<br><br>AFFIRMED; MOTION TO WITHDRAW GRANTED |

## CASEY R. TUCKER, Judge

Stacy Lewis appeals the Miller County Circuit Court's order terminating her parental rights to her children Minor Child 1 ("MC1") D.O.B. February 19, 2007; Minor Child 2 ("MC2") D.O.B. October 20, 2009; Minor Child 3 ("MC3") D.O.B. October 13, 2011; and Minor Child 4 ("MC4") D.O.B. March 21, 2014, and ordering that they remain in the custody of the Arkansas Department of Human Services ("DHS"). Stacy's attorney filed a no-merit brief accompanied by a motion to withdraw as counsel pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), alleging that Stacy had no meritorious basis for appeal. The clerk of the court mailed copies of the brief and motion to Stacy informing her of her right to file

pro se points for reversal. Stacy elected not to file pro se points. We affirm the termination of Stacy's parental rights and grant counsel's motion to withdraw.

I. *Procedural History*

On April 26, 2022, DHS filed a petition for dependency-neglect against Stacy Lewis and Evan Lewis based on the allegations of abuse, parental unfitness, and neglect.[1] The allegations and facts presented in the petition are that on April 20, 2022, a school resource officer located MC3 walking alone down Arkansas Boulevard in Texarkana. MC3 stated that she was scared to return home and said she had been physically abused by Stacy. She also told the resource officer that she is diabetic and would get a spanking when her blood sugar is too high or too low. MC3 also stated that she is home schooled and had been sexually abused by her brother.

The Texarkana Police Department was contacted, and officers attempted to contact Stacy at her home but were unable to make contact despite knocking on every door and window for thirty minutes. Eventually, Stacy contacted the police department looking for MC3. Given MC3's allegations, investigators with the Children's Advocacy Center interviewed MC1, MC2 and MC3. MC3 reiterated most of what she had said to the resource officer. MC1, who was fifteen years of age, said that he had already graduated from high

---

[1]Evan Lewis was determined to be the father of MC2 and MC3. DHS amended its petition for dependency-neglect on May 17, 2022, to reflect the name of MC1's legal father, Kenneth Smith, and an ex parte amended order followed. On May 22, 2024, the court held a hearing regarding the paternity of MC4, and DNA test results established that Lamarquis Watson is MC4's father. This appeal involves the termination of only Stacy's parental rights and, accordingly, does not address the proceedings with respect to the legal fathers.

school under Stacy's home-schooling program; and MC2, who was twelve years of age, was in his last year of school under her program. MC1 testified that they were home when the police arrived on the day MC3 ran away, but Stacy told them to stay quiet and not answer the door. MC2 said that Stacy had put him in charge of MC3's diet. DHS interviewed Stacy as well. After the interviews on the same day—April 20, 2022—the police removed all four children from the custody of Stacy and Evan Lewis.

Before the petition for dependency-neglect was filed, Stacy was charged with domestic battery, endangering the welfare of her niece (who was a minor), and false imprisonment, all in the first degree, with respect to incidents that occurred on March 15 and 17, 2021.

The adjudication hearing on the petition for dependency-neglect was held on June 22, 2022. The court found the allegations in the petition to be true and correct, that Stacy engaged in extreme or repeated cruelty, and that the minor children were dependent-neglected as the result of abuse, neglect, and parental unfitness. The goal of the case was set as reunification with a concurrent goal of relative placement. The court ordered Stacy to initially have supervised visitation, to complete a myriad of services, and to maintain employment and stable housing.

Review hearings were held on September 21 and December 22, 2022. The court found Stacy had complied with case-plan orders by maintaining housing; cooperating with DHS and allowing DHS access to her home; submitting to psychological evaluation; completing parenting classes; and attending counseling. The court also found that DHS had complied with the court's orders and had made reasonable efforts to provide Stacy with

family services and finalize a permanency plan for the juveniles. At those hearings, the goal of the case remained reunification with a concurrent goal of relative placement.

An emergency review hearing was held on February 13, 2023, and the court directed that MC2 and MC3 have no contact pursuant to the counselor's recommendations. This required Stacy and Evan to rotate between in-person and virtual visitation so that MC2 and MC3 were not physically present at the same time. The parties were further ordered not to discuss the case with the juveniles and to not speak negatively to the children regarding other parties or the DHS employees.

A permanency-planning hearing was held on April 12, 2023. The court found that DHS had complied with the case plan and had made reasonable efforts to provide services and finalize a permanency plan for the minors. Stacy was making reasonable efforts toward achieving the goals established in the case plan, and reunification remained the goal. While MC2 and MC3 were placed in separate foster homes, DHS was making reasonable efforts to reunite and allow contact between them. There were other review hearings, and some concerns arose about Stacy's failure to encourage MC2 regarding his sex-specific therapy and telling him he did nothing wrong. MC2 had been in a qualified residential treatment program for sexual offenders, and he refused to complete the program. In the December 2023 review hearing, the court suspended contact between MC3 and Stacy.

The circuit court held a hearing on February 14, 2024, because Stacy was discussing her criminal trial with the children—some of whom would be testifying at the criminal trial. She also threatened the children and a foster parent. She failed to follow the counseling

4

orders and did not start family therapy. At the end of the February 14 hearing, Stacy's family time was suspended pending the conclusion of her criminal trial.

Stacy's criminal jury trial was held on February 28 and 29, 2024. The jury convicted Stacy on all counts. She was sentenced to thirty-six years in the Arkansas Division of Correction.

After the criminal trial was concluded and upon motion by DHS, a hearing was held on July 11, 2024, requesting termination of Stacy's parental rights. At the hearing, testimony was taken from Stacy, the court-appointed attorney ad litem, an adoption specialist, and a DHS representative. On July 26, the court issued a written letter setting forth its findings and directing counsel for DHS to draft the order terminating Stacy's parental rights. The written order was entered on August 13, 2024. Though the court was required to find only one statutory ground for terminating Stacy's parental rights, after considering the evidence, the circuit court found that the evidence proved the following grounds:

> That the juveniles had been adjudicated by the court to be dependent-neglected and had continued to be out of [Stacy's] custody for twelve (12) months, and despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions had not been remedied by [Stacy]. [Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2023)];

> That other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juveniles in the custody of [Stacy] is contrary to the juveniles' health, safety, or welfare and that, despite the offer of appropriate family services, [Stacy] has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate [Stacy's] circumstances that prevent the placement of the juveniles in the custody of the [Stacy]. [Ark. Code Ann. § 9-27-341(b)(3)(A)–(B)(vii)*(a)*];

5

[That Stacy] was found by a court of competent jurisdiction, including the juvenile division . . . to have subjected the minors to aggravated circumstances [defined as being] abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that there is little likelihood that services to the family will result in successful reunification. [Ark Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)((i)*]; and

[That Stacy] was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. [Ark. Code Ann. § 9-27-341(b)(3)(B)(viii)].

As required, the court also found that it was in the children's best interest that Stacy's parental rights be terminated by finding that the minor children are adoptable and that there would be potential harm if they were returned to Stacy's custody.

At Stacy's request, counsel filed a notice of appeal. Stacy's counsel subsequently filed a no-merit brief and a motion to withdraw. While the circuit court found each statutory ground for termination as set forth above was independently sufficient to justify the termination of her parental rights, as is authorized, Stacy's counsel raised only one of the statutory grounds in her no-merit brief. Stacy's counsel relied on the circuit court's finding that Stacy's rights were terminated because she was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juveniles' lives. The judge found that a sentence of thirty-six years constitutes a substantial part of Stacy's children's lives.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo. *Hall v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 4. An order forever terminating parental rights must be based on a finding by clear and convincing evidence that termination is in the children's best interest.

6

Ark. Code Ann. § 9-27-341(b)(3)A). The circuit court must consider the likelihood that the children will be adopted if the parents' rights are terminated and the potential harm that could be caused if the children are returned to the parent. *Id.* The trial court must also find clear and convincing evidence of one or more grounds for termination, *Id.* When the burden of proving a disputed fact is by clear and convincing evidence, the appellate inquiry is whether the circuit court's finding is clearly erroneous. *McGaugh v. Ark. Dep't of Hum. Servs.,* 2016 Ark. App. 485, 505 S.W.3d 227. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In resolving the clearly erroneous question, we defer to the circuit court because of its superior opportunity to observe the parties and judge the credibility of the witnesses. *Id.*

### III. *No-Merit Petition*

Arkansas Supreme Court Rule 6-(9)(i) permits counsel for an appellant in a termination-of-parental-rights case to file a no-merit petition and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious ground for appeal. Ark. Sup. Ct. R. 6-9(i)(1). The petition must include an argument section that lists all adverse rulings to the appellant made by the circuit court on all objections, motions, and requests made by appellant at the hearing from which the appeal arose and explains why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(i)(1)(A).

### IV. *Adverse Rulings*

Stacy's counsel correctly asserts that there were only two adverse rulings at the termination hearing. The first ruling the circuit court made that was adverse to Stacy involved the attorney ad item's elicitation of testimony from a witness with respect to each minor child's preference with respect to placement. Counsel for Stacy objected to this testimony as hearsay. The court ruled that these were statements by a party opponent. This was an error; however, this court has stated that it will not reverse a circuit court's ruling on admissibility absent an abuse of discretion and prejudice. *Wilson v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 666, 476 S.W.3d 816. The hearsay did not serve as a basis for the court's ruling; accordingly, Stacy was not prejudiced by the adverse ruling. Further, even if the circuit court considered the testimony in making its ruling, the testimony could have been elicited from the attorney ad litem herself.

The only other adverse ruling was the actual termination of parental rights. In closing, Stacy's counsel asked that the case be dismissed. Stacy's counsel stated that Stacy was appealing her criminal conviction and asked to delay until the criminal appeal was over. The circuit court terminated Stacy's parental rights on four grounds, but only one ground is necessary for termination to occur. *Robinson v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 262, 520 S.W.3d 322. As reflected below, the circuit court's termination of Stacy's parental rights was not clearly erroneous.

V. *Analysis*

As Stacy's counsel has acknowledged, Stacy had no meritorious basis to appeal the circuit court's order that her parental rights were terminated pursuant to Ark. Code Ann. §

8

9-27-341. At the final hearing, DHS proved (a) grounds for termination as defined in the statute; and (b) that it is in the children's best interest that the termination is ordered by considering (i) the likelihood of adoption; and (ii) the potential harm if the children are returned to the parent.

## A. Ground For Termination

Stacy was sentenced to thirty-six years in prison. Her children were seventeen, fourteen, twelve, and ten at the time of the termination hearing. As stated in Ark. Code Ann. § 9-27-341(a)(3),

> The intent of this section is to provide permanency in a juvenile's life in all instances in which the return of the juvenile to the family home is contrary to the juvenile's health, safety and welfare and it appears from the evidence that a return to the family home cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective.

With legislative intent in mind, and from the evidence submitted at trial, it was not clearly erroneous for the circuit court to find that a sentence of thirty-six years is a substantial part of the children's lives. Accordingly, the court did not err in finding Stacy's sentence to thirty-six years in prison as a statutory ground for termination.

## B. Best-Interest Analysis

We now turn to the two-prong best-interest-of-the-children analysis. Regarding the first prong, adoptability, the courts have held that adoptability is not an essential element of proof but is a factor when determining best interests. *Baker v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 549, at 8, 680 S.W.3d 450, 454. Further, this court does not require abundant evidence of adoptability; generally, a caseworker's testimony that a child is adoptable is

sufficient. *Kerr v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 271, at 7, 493 S.W.3d 342, 346. In this case, the adoption specialist testified that all four children are adoptable. The specialist specifically testified that the children are all intelligent and healthy, and their caregivers had positive things to say about them. When questioned about MC2 and his adoptability due to sexual-abuse allegations, the specialist stated that while that allegation may hinder adoption, it does not prohibit it. The evidence presented is sufficient to support the children's adoptability. *Brabon v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 2, 388 S.W.3d 69.

With respect to the second prong of the best-interest analysis, "potential harm" could occur to the children if they were returned to Stacy's custody, and Stacy was already incarcerated at the time of the termination hearing. She even admitted that the children could not be returned to her. Stacy's incarceration and, accordingly, lack of adequate housing and employment, is sufficient proof of potential harm if the children were returned to Stacy's custody.

## VI. *Conclusion*

In light of our de novo review of the evidence, our examination of the entire record, and Stacy's counsel's no-merit brief, we conclude that the circuit court did not clearly err in terminating Stacy's parental rights. There was sufficient evidence to support the termination of Stacy's parental rights and to support the finding that termination is in the children's best interest. Stacy's counsel has complied with the requirements of Ark. Sup. Ct. R. 6-9(i) and

*Linker-Flores*, *supra*, and has adequately explained why an appeal would be wholly frivolous.

We affirm the termination of Stacy's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

WOOD and MURPHY, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.