Cite as 2026 Ark. App. 13

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-25-266

| | |
|---|---|
| | **Opinion Delivered** January 14, 2026 |
| MARIA GARCIA-FERNANDEZ<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. 66FJV-24-9] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | HONORABLE DIANNA HEWITT LADD, JUDGE |
| | AFFIRMED; MOTION GRANTED |

**BRANDON J. HARRISON, Judge**

Maria Garcia-Fernandez appeals from the Sebastian County Circuit Court's order terminating her parental rights to her children MC1, MC2, and MC3.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j) (2024), her counsel has filed a motion to withdraw and a no-merit brief asserting that there are no issues of arguable merit to support an appeal. The clerk of this court sent a copy of the brief and the motion to withdraw to the address on record for Fernandez, informing her of her right to file pro se points for reversal pursuant to Rule 6-9(j)(3), but she has not done so. We affirm and grant the motion to withdraw.

---

[1] The court also terminated the parental rights of the children's father, William Fernandez, but he is not a party to this appeal.

The Arkansas Department of Human Services (DHS) first became involved with Fernandez in 2018, when it made true findings of neglect and inadequate supervision regarding Fernandez's seven children. DHS assisted Fernandez with parenting classes, counseling, housing, and employment. The court closed the case in April 2022, and Fernandez retained custody of the children.

In September 2022, the Arkansas State Police Crimes Against Children Division (CAC) received a hotline report of sexual abuse with eight-year-old MC7 as the alleged victim and fourteen-year-old MC5 as the alleged offender. MC7 later disclosed sexual abuse by MC6 as well. On 29 November 2022, DHS placed a seventy-two-hour hold on MC7.

On 4 January 2024, the Fort Smith Police Department requested that DHS respond to Fernandez's residence. The home reeked of urine, had water damage in the kitchen, had holes in the walls, had dirty floors, and was infested with spiders. DHS discovered that fourteen-year-old MC1 had been living with a neighbor for over two years and that five-year-old MC3 had reported sexual abuse by his older brother, twenty-year-old Tysean. MC1 denied that he had been sexually abused but said that he worried for his younger brothers if Tysean was living in the home. MC1 also reported that other kids in the neighborhood had said Tysean showed them his penis or pictures of a penis.

DHS caseworkers spoke to Fernandez about these disclosures, and she seemed genuinely shocked, but she also did not know where Tysean could stay if not with her. The caseworkers and Fernandez decided that Fernandez, twelve-year-old MC2, and MC3 would stay with a friend, and MC1 would continue to stay with the neighbor.

DHS conducted a case-review meeting and determined that Fernandez had failed to protect MC1, MC2, and MC3 from Tysean by allowing Tysean to live in the home. Fernandez had also failed to protect MC7. DHS also discovered that Fernandez had not been honest about not staying in the home.

Consequently, DHS exercised an emergency hold on MC1, MC2, and MC3 due to failure to protect, failure to supervise, and environmental concerns. The circuit court granted emergency custody on 8 January 2024 and later found probable cause to continue custody with DHS.

On 14 February 2024, the court adjudicated the children dependent-neglected due to the environmental conditions of the home and also found that "the allegations in the petition and accompanying affidavit are substantiated by the proof." The court ordered Fernandez to follow the case plan and specifically to participate in counseling, employment services, and parenting.

The court reviewed the case in June 2024 and found that Fernandez had maintained her employment, had a vehicle but no driver's license, was not attending counseling, and visited with the children in person on Sundays and via Zoom on Fridays. The court entered a permanency-planning order in November 2024; found that Fernandez had not made significant, measurable progress; and changed the goal of the case to adoption following termination of parental rights. The court explained that while Fernandez did have a job, she had prioritized her job over her children and cited her job as the reason she could not complete counseling. She had also maintained visitation but ignored MC3 during visitation,

which the court found troubling. Fernandez also had a history of denying that abuse occurred under her watch.

DHS filed a termination petition on 22 November 2024. As statutory grounds for terminating Fernandez's parental rights, DHS cited failure to remedy, subsequent factors, aggravated circumstances, and previous termination of parental rights.[2] *See* Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(*a*), (vii)(*a*), (ix)(*a*)(3) and (ix)(*a*)(4)(*A*) (Supp. 2023). At the termination hearing, DHS caseworker Mayra Duenas testified that Fernandez had completed services, but that "it doesn't appear that she's using the skills that she was supposed to learn in the parenting class." Fernandez had not taken any responsibility for why the children were in foster care and instead "blames the children completely." Fernandez also works long hours (5:00 a.m. to 5:00 p.m.) six days a week, which is what led to the lack of supervision with the children, and she does not have much of a support system. She was unable to take the children to appointments or make sure that they went to school. Duenas expressed that after six years of working with the family, DHS did not feel that further services would help. She also said that the children are adoptable, describing them as "healthy kids; super sweet; and, I mean, they seem to be doing great right now."

Fernandez testified that DHS had never told her there was a problem with her job and that if DHS had offered child-care assistance, she would have accepted it. Her work hours are 7:00 a.m. to 5:00 p.m. Monday through Friday, and she sometimes works on Saturday. She did not have a support system to help her with the kids. However, a man named Mark Williams had come with her to court, and he planned to help her with the

---

[2]The court terminated Fernandez's parental rights to MC7 on 2 July 2024.

kids. Fernandez said that Williams is MC3's biological father. On cross-examination, she said that she had not believed the allegation that Tysean touched MC3, "[b]ut if he did, he's not around no more." She also denied any lack of supervision and said, "[I]f I'm not around I got someone to watch my kids."

Finally, Deloris Williams, the foster parent for MC2 and MC3, testified that she is a mental-health therapist and that the children are currently in therapy. Williams explained that the children have to be told to do simple things like flush the toilet or how to bathe correctly. She also had to implement a safety plan after the children were found engaging in sexually suggestive behaviors. Williams said that she could not leave the boys alone with each other. Academically, the boys are behind, although they are improving now that they are taking ADHD medication.

In its ruling from the bench, the court found that all four statutory grounds pled by DHS had been proved. The court reiterated its finding that Fernandez prioritized her work over her children and found that she is not credible. The court also found that termination of parental rights is in the children's best interest and noted Fernandez's failure to accept responsibility and her "indifference to the children in this case." The court found that the children would be at risk of harm physically and psychologically if returned to her care. The court entered its written order on 24 February 2025, and Fernandez timely appealed.

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum.*

*Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008). Proof of only one ground is necessary to terminate parental rights. *Id.*

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. The brief must include an argument section that includes all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). Additionally, the brief's statement of the case and facts are required to contain all rulings adverse to the appellant made by the circuit court at the hearing from which the order on appeal arose. Ark. Sup. Ct. R. 6-9(j)(1)(B). In evaluating a no-merit brief, the issue for the court is whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, *supra*.

In order to terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B). *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, 609 S.W.3d 661. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Counsel first argues that there is no meritorious basis on which to challenge the statutory grounds found by the circuit court. Fernandez's parental rights were terminated, in part, because her parental rights had been involuntarily terminated as to another child. At the time of the termination hearing, Fernandez's parental rights had been terminated as to MC7 in a separate dependency-neglect proceeding, and a certified copy of the court order in that case was entered into evidence without objection. Only one ground is necessary to support termination. *Draper v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 112, 389 S.W.3d 58.

Regarding the first prong of the best-interest analysis, adoptability, counsel asserts that the caseworker testified that the children are adoptable, which is sufficient evidence of that element. *Lewis v. Ark. Dep't of Hum. Servs.*, 2025 Ark. App. 209, 711 S.W.3d 153 (this court does not require abundant evidence of adoptability; generally, a caseworker's testimony that a child is adoptable is sufficient). As to the second prong, potential harm, counsel contends that DHS presented evidence to support the court's conclusion that the

7

children would face physical and psychological harm if returned to Fernandez's care. DHS had been involved with the family since 2018, but that did not prevent MC7's removal after Fernandez's lack of supervision resulted in the child being sexually abused by a sibling in the home. It also did not prevent the removal of MC1, MC2, and MC3 after new allegations of sexual abuse by an adult sibling came to light. Further, Fernandez testified that she believed she had supervised her children adequately and did not understand why it was alleged she had failed to supervise her children appropriately.

Counsel explains that a parent's failure to protect a child provides an adequate basis to support a potential harm finding. *Tovias v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 337, 601 S.W.3d 161. In addition, the circuit court is also allowed to consider a parent's past behavior as a predictor of future behavior. *Yelvington v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 337, 580 S.W.3d 874. Here, Fernandez's past behavior showed that she repeatedly failed to protect her children from sexual abuse and was in denial as to the cause of the children's removal. Counsel concludes that the evidence taken as a whole supports the circuit court's conclusion that the children would be at risk of potential harm if returned to Fernandez's custody.

Finally, counsel asserts that in addition to the termination decision itself, there were two rulings adverse to Fernandez made by the circuit court at the termination hearing. First, during Duenas's testimony, DHS elicited testimony about environmental concerns in Fernandez's home. DHS counsel asked, "Was there more than one time that the home was a concern, or was it just the one time?" Duenas responded, "No, it was several times. It was, I mean, that's stretching back to the first case as well." Defense counsel asked that the

witness's answer be limited to the particular case before the court, which opened in January 2024, and that defense counsel was not on notice "that we would be going back before this particular filing in the petition." DHS countered that limiting evidence would not be appropriate given that one of the concerns was whether Fernandez could maintain an appropriate home. In addition, one of the statutory grounds pled was the previous termination, which would allow DHS to offer evidence from that separate case. The court agreed with DHS.

On appeal, counsel explains that although the specific basis of the objection was not stated, the arguments provided to the circuit court are founded in both a relevancy objection and a due-process argument. This court has held that a parent's history with DHS can be relevant in dependency-neglect proceedings. *See Brown v. Ark. Dep't of Hum. Servs.*, 2015 Ark. App. 725, 478 S.W.3d 272 (evidence of a parent's history with the child's siblings and DHS may be relevant to the best-interest analysis). Therefore, counsel asserts, there is no meritorious basis for appeal on the adverse ruling regarding relevancy.

Regarding due process, defense counsel argued at the hearing that she was not placed on notice that facts occurring before the children's removal in January 2024 would be elicited, but appellate counsel contends that the pleadings put Fernandez on notice that environmental concerns were part of the reason for removal and for the later adjudication of dependency-neglect. Fernandez was likewise put on notice that one of the statutory grounds for termination alleged by DHS was that she had her parental rights involuntarily terminated as to a sibling in a separate proceeding, and one of the findings in that separate proceeding was that the conditions of the home throughout the case had been "appalling."

9

Counsel argues that Fernandez was sufficiently on notice that the issues surrounding her prior termination of parental rights would likely be addressed at the termination hearing and that there is no meritorious basis for reversal on the adverse ruling on due-process grounds.

The second adverse ruling occurred during Williams's testimony describing the sexually suggestive behavior between MC2 and MC3. Specifically, the attorney ad litem asked, "So they were doing behaviors when other [foster] children walked in?" Williams responded, "Yes, yes, alone with MC3 doing sexual acts playing like, you know, with hot dogs and stuff sucking on them, asking MC2 if this is how you like it, huh, this is how you like it." Defense counsel objected on hearsay grounds. DHS asserted that the testimony was not offered to prove the matter asserted, and the circuit court agreed.

Counsel asserts that MC's statement was not offered by Williams to prove the truth of her testimony; it was offered to explain why she had put a safety plan in place in her home. Testimony that goes to a witness's course of conduct rather than to prove the truth of the matter asserted is admissible as nonhearsay. *Decay v. State*, 2009 Ark. 566, 352 S.W.3d 319. Counsel contends that because this statement was admissible nonhearsay, the circuit court did not abuse its discretion in making this evidentiary ruling. Therefore, this adverse ruling provides no meritorious basis for reversal.

Having reviewed the record and the brief presented by counsel, we hold that the circuit court had sufficient evidence on which to find that it was in the children's best interest for Fernandez's parental rights to be terminated and that statutory grounds for termination existed. Thus, we grant counsel's motion to withdraw and affirm the termination of parental rights.

Affirmed; motion granted.

ABRAMSON and TUCKER, JJ., agree.

*Streit Law Firm, PLLC*, by: *Johathan R. Streit*, for appellant.

One brief only.